IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MITCHEL RENDA, | : |
| *Plaintiff,* | : Case No. 1:23-cv-515 |
| vs. | : Judge Jeffery P. Hopkins |
| HONEYWELL INTERNATIONAL, INC., | : |
| *Defendant.* | : |

**OPINION & ORDER**

This case is before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. Doc. 14. Plaintiff opposes the Motion[1] (Doc. 17), and Defendant has filed a Reply (Doc. 18).

The filing of this Motion to Dismiss renders moot Defendant's prior Motion to Dismiss (Doc. 10) which is **DENIED** on that basis. Plaintiff has sought leave to file additional authority in support of his position (Doc. 20), which Defendant has not opposed and which is therefore **GRANTED**. See S. D. Ohio Civ. R. 7.2(a)(2).

Defendant seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff's Second Amended Complaint fails to state a claim upon which relief

---

[1] The Response is signed by Attorney Noah Hurwitz. He is also the sole attorney signing a number of other documents filed on Plaintiff's behalf. Although Attorney Hurwitz has been admitted pro hac vice (Notation Order granting Doc. 3), he has not been permitted to appear as the trial attorney. S. D. Ohio Civ. R. 83.5(a) requires all filings to be signed by the designated trial attorney. S. D. Ohio Civ. R. 83.4(a) requires designation of a "Trial Attorney" who is a permanent member in good standing of the bar of this Court. Plaintiff's counsel are cautioned to comply with these rules in future filings.

1

can be granted. Defendant relies on the general standard for evaluating pleadings under Rule 12(b)(6) enunciated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)], at 346, 125 S.Ct. 1627; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Twombly,* 550 U.S. at 558; see also *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

2

face,'" *Doe v. Miami University*, 882 F.3d 579 (6th Cir. 2018), quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), in turn quoting *Twombly*, 550 U.S. at 570. *Twombly* and *Iqbal* apply to review of complaints for failure to state a claim under §§ 1915A(b)(1) and 1915(e)(2)(B)(II). *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010).

For the proposition that a different more liberal standard applies to evaluating complaints of civil rights violations, Plaintiff relies on *Inner City Contracting, LLC v. Charter Township of Northville, Michigan,* 87 F.4th 743 (6th Cir. 2023), the new supplemental authority Plaintiff provided after briefing of the Motion to Dismiss was presumptively complete. Doc. 20. But the *Inner City* decision relies for that proposition on *Lucarell v. McNair,* 453 F.2d 836 (6th Cir. 1972), which itself relies on the notice pleading standard endorsed in *Conley v. Gibson*, 355 U.S. 41 (1957). *Lucarell* was decided twenty-five years before the Supreme Court expressly overruled *Conley* in *Twombly*. Whichever of the two standards a district court might prefer, it must follow that adopted by the Supreme Court. "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982).

That said, however, the Court believes Plaintiff's Second Amended Complaint satisfies the *Iqbal/Twombly* standard for the following reasons.

Title VII of the 1964 Civil Rights Act forbids employers from discriminating against employees on the basis of the employee's religion. For purposes of the Motion to Dismiss, it is apparently undisputed that Plaintiff was an employee of Defendant Honeywell. In the course of dealing with the COVID-19 pandemic, Honeywell required all employees to be

3

vaccinated and to submit proof that they had done so. Plaintiff refused to be vaccinated and indeed claims he has not been vaccinated against any illness for the last five years.

Honeywell had a policy allowing employees to apply for a religious exemption from this policy; a copy of the policy is attached to the Motion at Doc. 14-1, PageID 142. Plaintiff's first application for exemption is at PageID 144 *et seq*. In it he professes to be a "follower of Jesus" who also believes on the basis of science from undisclosed sources that the vaccine is ineffective. He essentially says he could overcome his conscientious scruples against the vaccine if it were useful in protecting others. As support he attaches a letter from a former pastor in Florida, Walker Day, who writes that his church, the Church of Eleven22, believes it is permissible for its congregants/followers to take the vaccine or refuse it. As authority for refusing, he cites passages from two Pauline Epistles, 1 Corinthians and Romans, about whether Christians could consume meat from animals sacrificed to pagan gods and generalizes this to keeping the body pure from unclean substances. Paul essentially says one should follow one's conscience in the manner and accept the results of others doing the same. Pastor Day also mentions the concerns some people have about the use of aborted fetal cells in preparing the vaccine.

Honeywell denied the exemption request, writing

> The Company has denied your Exemption from its COVID-19 vaccine mandate for the following reason(s):
>
> While we do not doubt that you are a religious person, your stated reasons for accommodation are not based on a clear nexus to religious tenets of your beliefs. Instead, you cite your opinions and beliefs bout the efficacy of the vaccines, the science behind them, the fact that you are relatively young and fit, and that you believe you should be able to make up your own mind about the vaccines. These reasons do not support a religious accommodation uner [sic] the law.

4

Doc. 14-1, PageID 154.

Plaintiff applied again for religious exemption emphasizing his reliance on his conscience. Doc. 14-2. Honeywell denied this second application writing:

> The Company has denied your Exemption from its COVID-19 vaccine mandate for the following reason(s):
>
> We note that this is your second submission and request. However, the primary basis or your request for accommodation remains grounded in your personal decision not to take the vaccine and to follow your conscience in that decision. You state that the decision not to be vaccinated is one of conscience for you and reached through prayer, but you do not draw any clear nexus to any tenet of religious belief that would prohibit such vaccination. As such, your arguments are still insufficient to support the need for a religious accommodation under the law.

*Id.* at PageID 167. As a result of his failure to be vaccinated, Plaintiff was fired by Honeywell and brought suit August 14, 2023.[2] Doc. 1.

The Second Amended Complaint makes the following averments regarding Plaintiff's religious beliefs:

> 11. Plaintiff seeks to make all decisions in life, especially those regarding vaccines, through prayer and the guidance of the Holy Spirit.
>
> 12. Plaintiff believes that as a follower of Jesus Christ, the Holy Spirit gives him is convictions about how to live life so that he may keep a spiritually strong relationship with Christ.
>
> 13. Plaintiff believes that the Bible guides the conviction of religious individuals and that anything not done in faith is sin.

---

[2] The Second Amended Complaint alleges Plaintiff filed a complaint with the EEOC on March 25, 2022 and received a Right to Sue letter on May 17, 2023.

14. Plaintiff did not take the decision to not receive the COVID-19 vaccine lightly.

15. Plaintiff believes that the Holy Spirit told him that his path was to remain unvaccinated, and he trusted that God was guiding him in his decisions.

16. Plaintiff consulted scripture, religious leaders, and conducted his own research ultimately making the decision to follow his God given convictions.

17. Plaintiff's conviction remains strong, and he believes that going against God's plan for him to remain unvaccinated is a sin.

18. On October 24, 2021, Plaintiff's pastor, Walker Day, sent Defendant a letter in support of Plaintiff's sincerely held bona fide religious beliefs. Pastor Day wrote, in pertinent part:

> It has come to our attention that Mitch Renda has requested a religious exemption from having to take the COVID Vaccine. Mitch was a part of our church. Each week, at the Church of Eleven22, we discuss the value of having an intimate personal relationship with Jesus Christ. While there are tenants [sic] that all must follow, the exact expression can vary widely from person to person.
>
> In 1 Corinthians 8, the Apostle Paul deals with this very issue. Some, as part of their intimate personal relationship with Jesus Christ, believe that it is fine to eat meat that has been sacrificed to idols. At the same time, others, who also hold a deep concern for the cause of Christ, believe that inside of their intimate personal relationship with Jesus Christ it would be a sin for them to eat this meat. Paul's doctrinal instruction to these believers is to not allow the exercising of their rights to become a stumbling block. In other words, if you feel it is fine to eat the meat, do so, without causing those who do not feel right about doing so to stumble. Scripture

> also states in Romans 14:4 that "But if anyone regards something as unclean, then for that person it is unclean" and instructs us not to violate the consciences of those convicted over this type of issue.
>
> Also, with new reports confirming that the vaccines contain cells derives/grown from aborted fetus cells we believe that an individual's convictions based on the sanctity of life should also protect them from this mandate if they choose. We believe life is a gift from God and that every life is intrinsically valuable. (Psalm 139) Because of this we affirm Mitch's decision to abstain from injecting these cells into her [sic³] body.
>
> It is well within the rights of a believer in Jesus to feel it important, and necessary, for people to take necessary precautions and get the vaccine. However, scripturally, it is also permissible for people, who feel like they are violating their intimate personal relationship with Jesus Christ and sinning against God by taking the vaccine, to abstain.

Doc. 13.

The pleading standard adopted by the Supreme Court in *Iqbal* and *Twombly* precludes reliance on mere conclusory allegations. However, Plaintiff's allegations of religious belief, both in the Second Amended Complaint and in his applications for exemption, are anything but conclusory. He professes to be a follower of Jesus Christ, that is to say a Christian. He avers belief in a number of Christian dogmatic concepts, notably in the Trinitarian nature of God by invoking the Holy Spirit. He relies on recognized canonical Christian scriptures, to wit, the Epistles of St. Paul to the Churches at Corinth and Rome. Whether his interpretations of those scriptures are widely or only narrowly accepted among Christians, those Epistles are

---

³ It appears from context that Plaintiff's chosen pronoun is "his."

7

universally accepted by Christians as canonical. He invokes the primacy of conscience as a determinant for Christian behavior. While such invocation can be a mask for completely self-chosen behavior, it is also a well-recognized tenet of Christian belief.[4]

## I. CONCLUSION

Plaintiff's Second Amended Complaint is not a mere conclusory recitation of the elements of a Title VII claim, rather it sets forth factual assertions which can be tested in discovery and submitted to a jury for acceptance or rejection. Defendant's Motion to Dismiss is therefore **DENIED.**

**IT IS SO ORDERED.**

September 26, 2024

Jeffery P. Hopkins
United States District Judge

---

[4] Even the Roman Catholic Church, a denomination not known for moral laxity in its teaching, clearly proclaims the primacy of individual conscience. ¶ 1782, Catechism of the Catholic Church (1995).